**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                                        :
In re:                                                  :        09 MD 2017 (LAK)
                                                        :
LEHMAN BROTHERS SECURITIES AND                          :
ERISA LITIGATION                                        :        **ECF CASE**
                                                        :
This Document Applies to:                               :
                                                        :
*In re Lehman Brothers Mortgage-Backed*                 :
*Securities Litigation, No 08-CV-6762.*                 :
                                                        :
-----------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR (I) CERTIFICATION OF THE CLASS FOR PURPOSES OF**
**SETTLEMENT, (II) APPROVAL OF NOTICE TO THE CLASS AND (III)**
**SCHEDULING OF FINAL SETTLEMENT APPROVAL HEARING**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 2

II.    STATEMENT OF FACTS ................................................................................. 2

III.   ARGUMENT ...................................................................................................... 6

     A.    Certification Of The Class For Settlement Purposes Is Appropriate .................... 6

          1.    The Class Satisfies the Requirements of Rule 23(a) ................................. 8

              a.    Numerosity ..................................................................... 8

              b.    Commonality ................................................................... 9

              c.    Typicality ..................................................................... 10

              d.    Adequate Representation ............................................... 11

          2.    The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3) ........................................................................ 12

              a.    Common Legal and Factual Questions Predominate ................. 12

              b.    A Class Action is Superior to Other Methods of Adjudication ................................................................. 13

          3.    Notice To The Class Should Be Approved ............................................. 14

IV.   PROPOSED SCHEDULE OF EVENTS ........................................................ 16

V.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..............................................................................7, 12, 13, 14

*In re Blech Sec. Litig.,*
187 F.R.D. 97 (S.D.N.Y. 1999) .................................................................2, 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007).......................................................................8, 9

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)...........................................................................8

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006)..........................................................................7

*In re Drexel Burnham Lambert Grp., Inc.,*
960 F.2d 285 (2d Cir. 1992).........................................................................11

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................15

*In re Globalstar Sec. Litig.,*
No. 01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS 24164
(S.D.N.Y. Dec. 1, 2004)...............................................................................9

*In re Initial Pub. Offering Sec. Litig,*
243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................9, 12

*In re Marsh & McLennan Cos. Sec. Litig.,*
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009) ....................................................................... passim

*In re Monster Worldwide, Inc. Sec. Litig.,*
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................14

*In re Oxford Health Plans, Inc., Sec. Litig.,*
191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................9, 10, 11

*In re Polaroid ERISA Litig.,*
240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................11

ii

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................7

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................................8, 10

*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)...............................................................................9

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
    No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927 (S.D.N.Y. Dec. 27, 2004).........9, 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................15

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840 ..................................15

*Weinberger v. Kendrich*,
    698 F.2d 61 (2d Cir. 1982)................................................................................7

**STATUTES AND RULES**

Fed. R. Civ. P. Rule 23 .................................................................... passim

Lead Plaintiff Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Trust (the "Operating Engineers" or "Lead Plaintiff[1]") and Additional-Named Plaintiffs New Jersey Carpenters Health Fund (the "New Jersey Carpenters") and Boilermakers-Blacksmith National Pension Trust (the "Boilermakers", with Operating Engineers and New Jersey Carpenters, collectively referred to as "Plaintiffs") on behalf of themselves and the Settlement Class (as hereinafter defined), in the action captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation,* No. 08-CV-6762 (LAK) (the "*Lehman MBS Action*") and proposed intervenors Iowa Public Employees' Retirement System ("IPERS") and Public Employees' Retirement System of Mississippi ("MissPERS" and, with IPERS, the "Intervenors"), respectfully submit this memorandum of law in support of their unopposed motion for: (i) certification of the proposed Settlement Class[2] for purposes of the Settlement with the Defendants[3]; (ii) approval of the form and manner of notice to putative Class Members; and (iii) the scheduling of a hearing (the "Settlement Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), dated January 13, 2012, and attached as Exhibit 1 to the Declaration of Kenneth M. Rehns, dated January 13, 2012, filed herewith.

[2] As discussed below, the parties stipulate to certification of a class for settlement purposes only. The parties agree to the following definition of the "Settlement Class": All persons or entities who purchased or otherwise acquired mortgage pass-through certificates pursuant or traceable to Structured Asset Securities Corporation's August 16, 2005 Registration Statement or May 10, 2006 Registration Statement, and the accompanying prospectuses and prospectus supplements in the following 17 offerings and who were damaged thereby: the LXS 2005-5N offering, LXS 2005-7N offering, LXS 2005-6 offering, LXS 2005-8 offering, LXS 2006-2N offering, LXS 2006-14N offering, LXS 2006-16N offering, LXS 2006-GP2 offering, GMFT 2006-AR4 offering, GMFT 2006-AR5 offering, SARM 2006-1 offering, SARM 2006-4 offering, SARM 2007-6 offering, SASCO 2007-BC1 offering, SASCO 2007-EQ1 offering, SASCO 2007-OSI offering and FFMLT 2006-FFB offering (collectively, the "Certificates") Excluded from the Class are Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers, Inc. ("LBI"), Structured Asset Securities Corporation ("SASCO"), Defendants and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns. Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.

[3] The Defendants are Mark L. Zusy ("Zusy"), Samir Tabet ("Tabet"), James J. Sullivan ("Sullivan"), Lana Franks Harber ("Harber"), Edward Grieb ("Grieb"), Kristine Smith ("Smith") and Richard McKinney ("McKinney").

I.      **INTRODUCTION**

The proposed Settlement provides for the payment of $40,000,000.00 for the immediate benefit of the Settlement Class to resolve the claims against Defendants. The Settlement was reached only after extensive investigation and litigation, including multiple in-person mediation sessions and additional negotiations – facilitated by the Honorable Daniel Weinstein, an experienced and highly respected mediator.  Indeed, by the time the Settlement was reached, Lead Counsel had: (1) filed a comprehensive consolidated Complaint after conducting an extensive factual investigation; (2) fully briefed a motion to dismiss filed by various defendants, which was denied in part and granted in part; (3) fully briefed and argued an appeal to the Second Circuit Court of Appeals regarding the dismissal of the Rating Agencies from the case; (3) conducted some fact discovery; (4) fully briefed motions to intervene on behalf of two additional plaintiffs (5) consulted with experts; and (6) and partially briefed an appeal to the Second Circuit Court of Appeals regarding certain claims of the Intervenors that had been dismissed.

Plaintiffs, Intervenors and Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Settlement Class, providing a meaningful recovery for the Settlement Class now.  Accordingly, Plaintiffs respectfully move for certification of the Settlement Class and approval of the form and manner of distribution of the Class Notice.

II.     **STATEMENT OF FACTS**

This is a putative securities class action alleging false and misleading statements and omissions in violation of §§ 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").

On June 19, 2008, the Alaska Electrical Pension Fund filed a putative class action in the Supreme Court of the State of New York, New York County, for violations of Sections 11 and 15 of the Securities Act against SASCO and certain other defendants, Index No. 2008-602158 (the "*State Court Action*") ("*Alaska Electrical Action*").   The *Alaska Electrical* Complaint specifically brought suit on behalf of a class comprising purchasers of 35 offerings of mortgage backed securities that were all sold pursuant to the SASCO 2006 Registration Statement.

On July 23, 2008, the New Jersey Carpenters Health Fund also brought suit in New York State Supreme Court for violations Sections 11 and 15 of the Securities Act on behalf of purchasers of five Lehman mortgage-backed securities offerings issued pursuant to one of the two SASCO Registration Statements at issue here.

The two cases were removed by Defendants to the Southern District of New York before this Court.   On October 30, 2008, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), New Jersey Carpenters published a notice of its action to investors, which provided a deadline to seek lead plaintiff appointment by December 31, 2008.   Thereafter, the International Union of Operating Engineers – Employers Construction Industry Retirement Trust ("Operating Engineers") moved for Lead Plaintiff.   By Order dated January 9, 2009, the Court appointed Operating Engineers as lead plaintiff, and Schoengold Sporn Laitman & Lometti P.C. ("SSL&L") as lead counsel of the consolidated action.[4]

On February 23, 2009, Lead Plaintiff, along with Plaintiff New Jersey Carpenters and Plaintiff Boilermakers, filed a Consolidated Securities Class Action Complaint ("Complaint") alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act on behalf of purchasers of mortgage-backed securities underwritten by Lehman Brothers, Inc. ("Lehman") and issued by

---

[4]     By Order dated June 3, 2009, SSL&L was substituted out as lead counsel and replaced by the law firm Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein").

SASCO, a special purpose entity and Lehman affiliate, pursuant to one of two Registration Statements – the 2005 Registration Statement or the 2006 Registration Statement (collectively, the "Registration Statements") and the accompanying Prospectuses and Prospectus Supplements. Plaintiffs did not name SASCO, Lehman Brothers Holding or Lehman Brothers, Inc. as Defendants because on September 15, 2008, they filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

On April 27, 2009, Defendants and the Rating Agencies filed motions to dismiss the Amended Complaint.

Following extensive briefing and argument, on February 1, 2010, the Court granted the Rating Agencies' motions to dismiss with prejudice.  The Plaintiffs thereafter timely filed a notice of appeal on March 1, 2010 from the February 1, 2010 Order to the United States Court of Appeals for the Second Circuit.  On June 1, 2011, the Second Circuit affirmed the District Court's determination with respect to the claims against the Ratings Agencies asserted by Plaintiffs.

On February 17, 2010, the Court denied in part and granted in part the Individual Defendants' motion to dismiss, sustaining Plaintiffs' claims regarding the systematic disregard of underwriting guidelines but dismissed certain claims for lack of standing because Plaintiffs' had not purchased certificates in all ninety-nine offerings identified in the Amended Complaint.  As a result, the motion to dismiss order sustained claims as to nine Offerings, LXS 2005-5N, LXS 2005-7N, LXS 2005-6, LXS 2006-2N, LXS 2006-14N, LXS 2006-GP2, GMFT 2006-AR4, GMFT 2006-AR5 and SARM 2006-1 (the "Plaintiff Offerings").

On March 18, 2010, MissPERS filed a motion to intervene as a representative plaintiff in the *Lehman MBS Action* to pursue claims on behalf of investors who purchased securities in the

LXS 2005-8, LXS 2006-16N and FFMLT 2006-FFB Offerings (the "MissPERS Offerings"). On August 11, 2010, IPERS filed a motion jointly with Plaintiffs to intervene as a representative plaintiff in the *Lehman MBS Action* to pursue claims on behalf of investors who purchased securities in the SARM 2006-4, SARM 2007-6, SASCO 2007-BC1, SASCO 2007-EQ1 and SASCO 2007-OSI (the "IPERS Offerings," together with the MissPERS Offerings, the "Intervenor Offerings").

On March 19, 2010, Defendants filed their Answer to the Amended Complaint.

On April 13, 2011, the Court substantially denied the Intervenors' motions to intervene in the *Lehman MBS Action*.  Although the Court granted the motions with respect to MissPERS' Section 12(a)(2) claims relating to its purchase of FFMLT 2006-FFB Certificates and IPERS' Section 12(a)(2) claims relating to its purchase of SASC 2007-BC1 and SARM 2006-4 Certificates, it denied the motions in all other respects.  The Plaintiffs and the Other Plaintiffs thereafter timely filed a notice of appeal from the April 13, 2011 intervention order to the United States Court of Appeals for the Second Circuit.  That appeal is currently pending.

In a letter endorsement dated March 31, 2010, this Court opted not to lift the PSLRA Discovery Stay in the *Lehman MBS Action* until resolution of the motions to dismiss in the *Lehman Debt/Equity Action*.  On July 27, 2011, the Court resolved the motions to dismiss the *Lehman Debt/Equity Action*, thereby lifting the stay of the *Lehman MBS Action*. On September 27, 2011, the parties in this Action filed a proposed Joint Scheduling Order and proposed Confidentiality Order.  As a result, the *Lehman MBS Action* has entered discovery.

Lead Counsel, along with counsel for MissPERS, Defendants' counsel and counsel for the insurers who issued the Directors & Officers (D&O) Insurance participated in an extensive mediation overseen by retired state court Judge Daniel Weinstein. The mediation was conducted

over the course of 10 months and included numerous in-person sessions, and telephonic and electronic communications ancillary thereto.

The Settlement at issue involves payments from the Debtor's D&O insurers, and as such the approval of the Bankruptcy Court is required. As a result, on November 9, 2011, Lehman Brothers Holdings, Inc. ("LBHI") filed with the Bankruptcy Court an unopposed motion seeking approval to release certain funds of the Debtor to pay for the proposed settlement. That motion was granted, and an Order was entered releasing the funds, by the Bankruptcy Court on December 7, 2011.

Moreover, on November 23, 2011, the Defendants filed an unopposed motion with the Second Circuit Court of Appeals seeking a stay of the pending appeal to the Second Circuit by the intervenor plaintiffs – Iowa Public Employees Retirement System and Mississippi Public Employees' Retirement System. This motion was granted, and an Order was entered staying the appeal, by the Second Circuit on December 7, 2011. Finally, at the time the within motion is filed, Plaintiffs and Defendants will simultaneously file a Joint Rule 62.1 Motion requesting that jurisdiction over claims of the Intervenor Plaintiffs be transferred back to this Court from the Second Circuit for purposes of adjudication of the settlement in this Action.

## III. ARGUMENT

### A. Certification Of The Class For Settlement Purposes Is Appropriate

In reviewing a proposed Settlement by the parties prior to final approval, the Court should preliminarily certify the Class for purposes of the Settlement and to issue notice under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons or entities who purchased or otherwise acquired mortgage pass-through certificates pursuant or traceable to Structured Asset Securities Corporation's August 16, 2005 Registration Statement or May 10, 2006 Registration Statement, and the accompanying prospectuses and prospectus supplements in the following 17 offerings and who were damaged thereby: the

> LXS 2005-5N offering, LXS 2005-7N offering, LXS 2005-6 offering,  LXS 2005-8 offering, LXS 2006-2N offering, LXS 2006-14N offering, LXS 2006-16N offering, LXS 2006-GP2 offering, GMFT 2006-AR4 offering, GMFT 2006-AR5 offering, SARM 2006-1 offering, SARM 2006-4 offering, SARM 2007-6 offering, SASCO 2007-BC1 offering, SASCO 2007-EQ1 offering, SASCO 2007-OSI offering and FFMLT 2006-FFB offering (collectively, the "Certificates") Excluded from the Class are Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers, Inc. ("LBI"), Structured Asset Securities Corporation ("SASCO"), Defendants and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns.  Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.

*See* Stipulation ¶1(rr).  The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig*., No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *27 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge."  *Id.* (quoting *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems… is not a consideration when settlement-only certification is requested.").  Here, the proposed Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class

action device, and the settlement is subject to the Court's approval at the Settlement Hearing.  As explained *infra*, certification is appropriate because the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.       The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### a.       *Numerosity*

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a).  "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  Numerosity is presumed when a class consists of forty members or more. See *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

While the exact number of Class members is unknown to Plaintiff at this time, Plaintiffs believe that there are hundreds of members in the proposed Class.  The proposed Settlement Class consists of purchasers of securities from seventeen public offerings of mortgage-backed securities totaling approximately $24.3 billion at issuance.  Based on the number and size of these offerings, the proposed Settlement Class likely consists of hundreds if not thousands of investors.

Thus, the Class is sufficiently numerous that joinder of all members would be impracticable, and accordingly satisfies Rule 23(a)(1). *See Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, at *10 (S.D.N.Y. Dec. 27, 2004) ("Plaintiffs are not obligated to prove the exact class size to satisfy numerosity ... the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period") (internal quotation marks and citations omitted).

### b.    *Commonality*

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  Federal securities cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions."  *In re Initial Pub. Offering Sec. Litig*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007); *see In re Globalstar Sec. Litig.*, No. 01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS 24164, at *10 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Plaintiffs and Intervenors have asserted claims under Sections 11 and 15 of the Securities Act against the Defendants.  These claims present many questions of law and fact which are common to all Class Members, including: whether Defendants violated the Securities Act; whether the Registration Statement issued by Defendants to the investing public negligently

omitted and/or misrepresented material facts about the underlying mortgage loans comprising the pools; and to what extent the members of the Class have sustained damages and the proper measure of damages. *See* Compl. ¶ 394. Because these questions of law and fact are common to all members of the Class, the commonality requirement of Rule 23(a)(2) is met.

### c. *Typicality*

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "the claims of the named plaintiffs arise from same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted); *see also Oxford Health Plans*, 191 F.R.D. at 375. "Typical" does not mean "identical." *See Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *32. The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions. *See ACLN*, 2004 U.S. Dist. LEXIS 25927, at **12-13. The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at **32-33; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the same alleged course of conduct by the Defendants caused the injuries to Plaintiffs, Intervenors and the members of the Class, and liability for this conduct is predicated

on the same legal theories.  Plaintiffs allege that, like the rest of the Class, they paid artificially-inflated prices for mortgage-backed securities as a result of the Defendants' allegedly materially false statements in the Registration Statements and Prospectuses.  Plaintiffs' claims, and the claims of absent Class Members, rest on the same theories and require the same proof.  Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

### d.    *Adequate Representation*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: whether (1) the claims of the lead plaintiffs (and intervenors) conflict with those of the class; and (2) the lead plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at **32-33; *Oxford Health Plans*, 191 F.R.D. at 376.

Plaintiffs, Intervenors and the Class share the common objective of maximizing their recovery, and no conflict exists between Plaintiffs, Intervenors and the members of the Class. *See Drexel*, 960 F.2d at 291; *In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members"). Moreover, Plaintiffs' Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified and able to conduct this litigation. *See* Rehns Declaration, Exhibit 2.  Therefore, Rule 23(a)(4) is satisfied.

2.      **The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (citation omitted). Certification of the Class serves these purposes.

a.      *Common Legal and Factual Questions Predominate*

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at **34-35; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the

class.").  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Defendants forms the basis of all Class Members' claims.  There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues.  The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

        **b.**        *A Class Action is Superior to Other Methods of Adjudication*

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of the mortgage-backed securities at issue.  Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Blech*, 187 F.R.D. at 107.  *See also Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *37 (recognizing that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide, Inc. Sec. Litig*., 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws ... inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible'").

There has been no indication that Class Members wish to individually control the prosecution of separate actions against the Defendants.  Indeed, the scope and complexity of Plaintiffs' and the Intervenors' claims against the Settling Defendants, together with the high cost of individualized litigation and the potential exhaustion of applicable Directors and Officers insurance to pay future claims, make it unlikely that, absent class certification, the vast majority of the Class Members would be able to obtain relief. Finally, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the parties seek to certify the Class solely for the purposes of settlement. As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  521 U.S. at 620. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

### 3.    Notice To The Class Should Be Approved

As outlined in the Proposed Order Certifying a Settlement Class, Approving the Form and Manner of Distribution of Class Notice to Putative Class Members and Setting a Hearing

Date for Final Approval of Settlement (the "Preliminary Order"), Plaintiffs and Intervenors will notify Class Members of the Settlement by mailing the Notice and Proof of Claim to all Class Members, and identifiable nominees holding certificates on behalf of Class Members, who can be identified with reasonable effort.  The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation or the motion for attorneys' fees and reimbursement of litigation expenses.

In addition to mailing the Notice and Proof of Claim form, Plaintiffs and Intervenors will provide for the publication of a Summary Notice in *Investors Business Daily* within ten (10) business days of the date of entry of the Preliminary Order.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act, 15 U.S.C. § 77u-4.  The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (internal quotation marks omitted).  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at **7-8 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004).

## IV.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs and Intervenors propose the following schedule for the Settlement-related events in this case.  The proposed dates in the right column are respectfully requested assuming that the instant Motion is granted during or promptly following a hearing on this matter.

| Event | Proposed Due Date |
|-------|-------------------|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 30 days after entry of Notice  Order |
| Deadline for publishing Summary Notice | 10 days after Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 21 days prior to Final Approval Hearing |
| Deadline for submitting exclusion requests or objections | 14 days prior to Final Approval Hearing |
| Deadline for filing reply papers | 7 days prior to the Final Approval Hearing |
| Deadline for submitting claims forms | 120 days after the Notice Date |

## V.   CONCLUSION

Plaintiffs and Intervenors respectfully request that the Court (i) certify the proposed Settlement Class for the purposes of the Settlement only; (ii) approve the proposed form and manner of notice to putative Class Members; and (iii) schedule a hearing on Plaintiffs' and Intervenors' motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.  A proposed Preliminary Order is being submitted herewith.

Dated: New York, New York
        January 13, 2012

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: ___/s/ Christopher Lometti_____

        Joel P. Laitman
        Christopher Lometti
        Richard Speirs
        Michael B. Eisenkraft
        Daniel B. Rehns
        Kenneth M. Rehns
88 Pine Street, Fourteenth Floor
New York, New York 10005
Telephone: (212) 828-7797
Facsimile: (212) 828-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
meisenkraft@cohenmilstein.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

        Steven J. Toll
        S. Douglas Bunch
1100 New York Avenue NW, Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

**WOLF POPPER LLP**

By:     /s/ *James A. Harrod*
Lester L. Levy
James A. Harrod
Matthew Insley-Pruitt
     845 Third Avenue, 12th Floor
     New York, NY 10022
     Telephone:  (212) 759-4600
     Facsimile:  (212) 486-2093
llevy@wolfpopper.com
jharrod@wolfpopper.com
minsley-pruitt@wolfpopper.com

*Counsel for Intervenor Public Employees'*
*Retirement System of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel.

**COHEN MILSTEIN SELLERS & TOLL, PLLC.**

/s/ Kenneth M. Rehns
_____
Kenneth M. Rehns
krehns@cohenmilstein.com
88 Pine Street
Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745